UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23076-Civ-LENARD
        (03-20566-Cr-LENARD)
MAGISTRATE JUDGE P. A. WHITE

ROY GEER,                       :

        Movant,                 :

v.                              :        REPORT OF
                                         MAGISTRATE JUDGE

UNITED STATES OF AMERICA,       :

        Respondent.             :
_____

## Introduction

This matter is before the Court on the movant's motion to vacate, attacking his convictions and sentences for conspiracy to import five kilograms or more of cocaine, attempted importation of five kilograms or more of cocaine, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, and attempted possession with intent to distribute five kilograms or more of cocaine entered following a jury verdict in case no. 03-20566-Cr-Lenard.

The court has reviewed the motion (Cv-DE#1) with supporting memorandum (Cv-DE#12) and affidavit (Cv-DE#13), the government's response with attached exhibit (Cv-DE#8), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

## Claims Raised

The movant raises the following claims:

        1.   He was denied effective assistance of

counsel, where his lawyer failed to conduct adequate pretrial investigation and call codefendant Godinez as a defense witness at trial. (Cv-DE#1:5).

2.    He was denied effective assistance of counsel, where his lawyer failed or refused to allow the movant to testify on his own behalf. (Cv-DE#1:6).

3.    He was denied effective assistance of counsel, where his lawyer impermissibly stipulated to the amount of drugs involved in the offense, thereby waiving the movant's right to contest the issue. (Cv-DE#1:7).

4.    He was denied effective assistance of counsel, where his lawyer failed to object to the incorrect or otherwise unlawful sentencing guidelines calculations as contained in the PSI. (Cv-DE#1:9).

5.    He was denied effective assistance of counsel on appeal, where his lawyer failed to raise as error on appeal that the court erred in denying trial counsel's request to strike for cause a biased potential juror. (Cv-DE#1:14).

<u>Procedural History</u>

On July 17, 2003, the movant was charged by Indictment with conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §952(a), 21 U.S.C. §963, 21 U.S.C. §960(b)(1) (Count 1), attempted importation of five kilograms or more of cocaine, in violation of 21 U.S.C. §952(a), 21 U.S.C. §963, 21 U.S.C. §960(b)(1), and 18 U.S.C. §2 (Count 2), conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §841(a)(1), 21 U.S.C. §841(b)(1)(A), and 21 U.S.C. §846 (Count 3), and attempt to possess with intent to distribute five kilograms or more of cocaine, in

violation of 21 U.S.C. §841(a)(1), 21 U.S.C. §841(b)(1)(A), 21 U.S.C. §846, and 18 U.S.C. §2 (Count 4). (Cr-DE#30). Prior to trial, the government filed an Information pursuant to 21 U.S.C. §851, seeking an enhanced sentence if the movant was convicted. (Cr-DE#62).

The movant filed a pretrial motion in *limine* to exclude the post-arrest statement of coconspirator Jose Godinez, or in the alternative for severance. (Cr-DE#51). Following a hearing on the motion, a Report was entered, recommending that the post-arrest statement be redacted, a limited instruction given, and the statement not be used to argue the guilt of any defendant, other than Godinez. (Cr-DE#119). In light of the foregoing, the Magistrate Judge further recommended that the request for severance be denied. (Id.). On December 9, 2003, after reviewing objections filed by the movant, the district court adopted the Report, and entered order denying severance. (Cr-DE#148). The movant eventually proceeded to trial, where he was found guilty as charged. (Cr-DE#219).

A PSI was prepared prior to sentencing. The probation officer determined that, pursuant U.S.S.G. §§3D1.2(d) and 2D1.1(a)(3), the movant was being held accountable for 58.95 kilograms of cocaine, and therefore, for an offense involving at least 50 kilograms, but less than 150 kilograms of cocaine, the offense level was set at 36. (PSI ¶¶17,18,26). The probation officer further determined that the movant had a total of three criminal history points, resulting in a criminal history category II. (PSI ¶33). Based on a total offense level 36 and a criminal history category II, the movant's advisory guideline range was determined to be 210 to 262 months in prison. (PSI ¶69). However, the probation officer noted, that because the statutory minimum mandatory term of imprisonment was twenty years for violations of 21 U.S.C. §§960(b)(1) and

3

841(b)(1)(A), pursuant to U.S.S.G. §5G1.1(c)(2), the guidelines range needed to be increased to 240-262 months in prison. (PSI ¶69). Objections to the PSI were filed by the movant. (Cr-DE#253). On May 24, 2004, the movant was sentenced to concurrent terms of 252 months in prison, followed by 10 years supervised release. (Cr-DE#300).

The movant appealed, raising the following claims:[1]

    1.   The court erred in denying Geer's motion to exclude the post-arrest statement of codefendant Godinez and motion to sever.

    2.   The court erred in denying Geer's motion for judgment of acquittal where there was insufficient evidence to support the convictions.

On September 13, 2006, the Eleventh Circuit affirmed the movant's judgment in a written, but unpublished opinion. United States v. Walden, et al., 175 Fed.Appx. 308 (11th Cir. 2006); (Cr-DE#390). Rehearing and rehearing en banc was denied on July 14, 2006. United States v. Walden, et al., 186 Fed.Appx. 983 (11th Ci2006)(table). Certiorari review was denied on November 27, 2006. Geer v. United States, ___ U.S. ___, 127 S.Ct. 688 (2006). This motion to vacate was timely filed less than one year later on November 21, 2007.[2] (Cv-DE#1).

Discussion of the Claims

---

[1]The claims are gleaned from the movant's brief on appeal, which can be found on Westlaw, a legal research database, at United States v. Geer, 2004 WL 4976765 (11th Cir. 2004), and from the appellate court's written, but unpublished opinion, United States v. Geer, 175 Fed.Appx. 308 (11th Cir. 2006); (Cr-DE#390).

[2]It is unclear when the motion was executed, as it is undated, however, it was received by the Clerk of Court on the date previously indicated herein. Thus, for purposes of the federal limitations period, the date it was executed is irrelevant as the motion was timely filed less than one year after certiorari review was denied by the Supreme Court.

In this collateral proceeding, the movant raises multiple claims which challenge counsel's effectiveness. In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato,

670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

In **claim one**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to conduct adequate pretrial investigation and call codefendant Godinez as a defense witness at trial. (Cv-DE#1:5).

In support thereof, the movant provides a March 5, 2008 unsworn letter from Godinez which states, as follows:

> This document serves to attest to the fact that on the evening of July 3, 2003, I Jose Lazaro Godinez did not provide any statement regarding the circumstances pertaining to events which transpired on board the Seaboard Florida on the aforementioned date. Furthermore I did not answer any questions other than those pertaining to biodemographic data (Name, Address, etc.) this fact is clearly substantiated by my sworn testimony at a "Evidence Suppression Hearing" Conducted before Magistrate Judge Simonton on October 9, 2003. Furthermore it was my understanding that I would be allowed to testify (as to the alleged statements) at trial but the defense rested allowing the jury to hear a one-sided argument, instead of the truth.

(Cv-DE#13:Exhibit).

It should first be noted that post-trial, self-serving affidavit/letter, such as the one relied upon by the movant in this case are viewed with extreme suspicion. See Drew v. Scott, 28 F.3d 460, 462-63 (5 Cir.), cert. denied, 512 U.S. 1266 (1994). See also May v. Collins, 955 F.2d 299, 314 (5 Cir. 1992) and cases cited therein, cert. denied, 504 U.S. 901 (1992)(when faced with recanting affidavits, trial court may make credibility choice in favor of trial testimony without taking additional live testimony). The unsworn letter submitted post trial claiming to exculpate the movant is highly suspect, especially given the evidence at trial

6

which established that the movant was actively involved in the offenses of conviction.

To succeed on a motion for a new trial based on newly discovered evidence, the movant must establish that: (1) the evidence was discovered after trial; (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the Court; and, (5) the evidence is such that a new trial would probable produce a different result. United States v Schlei, 122 F. 3d 944, 991 (11th Cir. 1997). The failure to satisfy any of these elements is fatal to a motion for a new trial United States v Lee, 68 F. 3d 1267, 1274 (11th Cir. 1995). In this case, the movant has failed to establish that his failure to ascertain this evidence was not due to lack of diligence on his part. Under these circumstances, he is entitled to no relief on this claim.

Even if coconspirator Godinez had testified as proffered above, no showing has been made in this collateral proceeding that the outcome of the guilt phase portion of the movant's trial would have been different. The facts adduced at trial reveal as follows. On June 28, 2003, two duffel bags containing cocaine were discovered aboard the Seaboard Florida, a three deck cargo vessel, which had departed from the Port of Miami on a 13-14-day voyage. (R14:3,22,324-26,349-50,382-85). The bags were concealed on the main deck of the vessel in a warehouse area used to store ship materials, such as spare parts, wires, piping, pipes, rope, and wood. (R14:324-26,349-50,382-85). After examining the bags, the captain of the vessel, Hector Martell, left two crew members to guard the bags, while he telephoned his superiors at Seaboard Marine, who directed the captain to bring the duffel bags to Miami. (R14:327,352). Thereafter, Captain Martell transferred the duffel

7

bags to a steel storage area behind his cabin, which he secured with two padlocks, keeping the keys in his possession. (R14:327,350,389).

Prior to the vessel completing its voyage, Captain Martell anchored the vessel at sea off of Miami Beach so that customs agents and U.S. Coast Guard officers could board the vessel and retrieve the drugs. (R14:327-28,337-38,352-53; R16:566-67). Numerous officers and agents eventually boarded the vessel, retrieved the duffel bags, and field tested the substance contained therein, which confirmed that the bags were carrying 59 square packages of cocaine,[3] which were then replaced by agents with sham cocaine. (R14:3,354; R16:572-72, 587; R19:888; R22:1289). The bags were then returned to the warehouse area where they were originally discovered. (R14:329,365; R17:649,707; R22:1289). Thereafter, some of the agents and officers left the vessel, while three agents, posing as crew members, remained aboard until the vessel docked at the Port of Miami. (R14:354; R16:574; R17:705).  Two of the remaining agents secreted themselves in the warehouse area where the drugs were stored. (R14:354; R16:574; R17:658; R22:1290).

Once the vessel reached docked at the Port of Miami, and U.S. Customs agents cleared it, the cargo would then be offloaded by employees of Eller ITO Stevedoring Company ("Eller"), who had the contract for unloading Seaboard Marine vessels. (R20:1061). Eller would in turn utilize longshoremen from the International Longshoreman's Association ("ILA") labor pool to unload the vessels. (R20:1062). The movant and coconspirator Godinez were employed by Eller as stevedore superintendents. (R20:1063-64). They would receive assignments from Operations Manager Fernando Alvarez,

---

[3]Subsequent laboratory analysis established that the duffel bags contained 58.95 kilograms of cocaine, which had a total approximately value of $1,061,100.00 to $1,179,000.00. (R16:603-04).

who scheduled their work, including ship assignments and shifts. (R20:1064).

Alvarez explained that six ships were scheduled to arrive at the port on July 3, 2003. (R21:1150). According to Alvarez, the stevedore superintendents assigned to unload the *Seaboard Florida* were Charles Anchors, coconspirator Godinez, and "Tony." (R20:1065-67). Anchors was scheduled to be the top deck stevedore, Godinez was scheduled as the yard stevedore,[4] and Tony was the bottom deck supervisor, coordinating the unloading of containers from the lower deck. (R20:1066-68). The movant, on the other hand, was listed to work as the stevedore superintendent on another vessel, the *Seaboard Star*. (R20:1069). However, on July 3rd, Alvarez learned for the first time that the movant had switched his work assignment with Tony, so that the movant would assume the duties of the bottom deck superintendent aboard the *Seaboard Florida*. (R20:1070-71; R21:1166-67). That day the movant asked a third mate from the vessel why it had been delayed, to which he was advised that the ship had been stopped in the Dominican Republic by Coast Guard officials, but that they had not found any stowaways or drugs aboard the vessel. (R14:395-96). The third mate recalled being surprised when the movant later drove a yellow truck aboard the vessel, because he had never before observed a truck enter a ship prior to commencing the unloading operation. (R14:402-403).

After the ship was cleared by customs, undercover agents observed three men walk along the side of the boat, wearing brightly colored vests used by port workers. (R16:582). Although the view by one of the agents was blocked by the appearance of the yellow truck, he was able to observe the movant, and his three coconspirators walk in front of the truck shortly after it was

---

[4]A yard stevedore occasionally boards the trailer deck of a ship to be unloaded in order to speak with the trailer deck stevedore. (R20:1067).

driven aboard the vessel. (R16:582-583). The movant, and the others then headed towards the location where the drug laden duffel bags were located. (R17:686,744,746). Coconspirator Walden then looked around the area with a flashlight and shortly thereafter signaled to the movant and the other coconspirators. (R:17:751-53; R18:786-87; R19:875). Walden thereafter picked up one of the duffel bags, and began to walk away. (R18:795-96). Godinez then bent forward, picked up the second duffel bag, and headed in the same direction as Walden. (R18:796,800,803).

Agents immediately thereafter gave a signal, and then ordered Godinez to get on the ground. (R18:805; R22:1293-94). Later, as Godinez was being taken down a walkway, one agent observed the other duffel bag Walden had been carrying on the ground. (R18:808-809). When that same agent also observed the movant in the yellow truck, he ordered the movant out of the truck. (R16:595-96; R18:810; R22:1303). Thereafter, the movant and others were arrested and transferred to the U.S. Customs office on Brickell Avenue. (R16:601-02; R19:930-31). After being advised of and waiving his constitutional rights, both verbally and by executing a written waiver of rights form, Godinez stated he was directed to pick up some stuff, which he believed to be illegal, and to place them on a truck, but had then been caught "red handed." (R18:831-32).

Thus, Godinez' representations in his unsworn letter are contradicted by his post-arrest statements and are thus highly suspect. Clearly, the proffered statements when viewed in light of the evidence adduced at trial, would not have affected the outcome of the movant's criminal proceeding. The statements contained in Godinez' letter are irreconcilable and this court finds incredible given Godinez' post-arrest statements. Moreover, even if the movant had attempted to call Godinez as a defense witness, no showing has been made that he would have testified as represented. At that

time, Godinez most likely would have invoked his Fifth Amendment rights and refused to answer any questions.

Even if counsel were deemed deficient for failing to investigate and call Godinez as a defense witness, the movant is nevertheless entitled to no relief on the claim because he cannot satisfy the Strickland prejudice prong. The record reveals that through cross-examination, counsel attacked the credibility of the numerous government witnesses, and their motives for testifying. Because the movant has failed to establish that the failure to call Godinez would have altered the outcome of the trial, no prejudice has been established and the movant is thus entitled to no relief on this claim.

It should also be noted that the movant cannot prevail on the claim that counsel failed to call this witness because counsel's strategic decision cannot be second-guessed in this proceeding. It is possible that calling this witness, who could have invoked his Fifth Amendment rights, or would have been subject to cross examination regarding motive and bias, could have tainted the jury's perception of the movant's guilt, and undermined the movant's defense. Scrutiny of an attorney's performance is highly deferential, therefore, reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland v. Washington, 466 U.S. 668, 689-90 (1984). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709

11

F.2d 1443, 1445 (11 Cir. 1983).

Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978). In this case, counsel's strategic decision to forego calling this witness does not rise to the level of ineffective assistance. The movant has thus failed to establish deficient performance or prejudice stemming from counsel's failure to call the witness at trial.

To the extent the movant means to argue that counsel was ineffective for failing to seek severance of the trials so that Godinez could testify as a defense witness, that claims likewise fails on the merits.

The general rule is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases. United States v. Brown, 505 F.3d 1229, 1268, (11th Cir. 2007), citing, Zafiro v. United States, 506 U.S. 534, 537-38 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."); United States v. Magdaniel-Mora, 746 F.2d 715, 718 (11th Cir. 1984)("To repeat the familiar, persons indicted together ordinarily should be tried together."); United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005); see also United States v. Beale, 921 F.2d 1412, 1428 (11th Cir. 1991)("The general rule is that defendants charged with a common conspiracy should be tried together.").

When defendants have been properly joined for trial, severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the

defendants or prevent the jury from making a reliable judgment about guilt or innocence.  <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993); <u>United States v. Blankenship</u>, 382 F.3d 1110, 1122 (11th Cir. 2004). The Court recognizes that serious risk to the integrity of a joint trial can occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. <u>Zafiro v. United States</u>, <u>supra</u>. Although severance may be warranted in some cases, courts have held that less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.  <u>Id</u>. <u>citing</u> <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987).

The Eleventh Circuit's framework for analyzing a motion to sever based on the desire to offer the exculpatory testimony of a co-defendant is well established. The defendant must first demonstrate: "(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial." <u>United States v. Cobb</u>, 185 F.3d 1193, 1197 (11th Cir. 1999). Once the defendant makes that threshold showing, the court must then: "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." <u>United States Baker</u>, 432 F.3d 1189, 1239 (11th Cir. 2005).

The movant has failed to identify a specific trial right that was compromised by the joint trial nor has he shown that the jury was unable to make an individualized determination about his guilt or innocence. Thus, no showing has been made that even had counsel argued as a basis for severance the reasons set forth herein, that the court would have granted a hearing which would have resulted in

severance. To the contrary, as previously narrated above, Godinez'
post-trial unsworn letter is highly suspect. Moreover, defense
counsel in fact sought severance on the bases that the government
intended to use Godinez' post-arrest statement which would
implicate the movant and violate his confrontation rights. The
court denied the motion, but did order the government to redact the
statement, so that there was no direct implication of any of
Godinez' coconspirators, and further ordered that the statement
omit reference to the "yellow truck." (Cr-DE#342:823). With those
revisions, the trial court concluded correctly that "[t]here is no
longer a direct implication of the movant. It could have been a
truck inside the vessel, outside the vessel, a blue truck, any
color truck, work or otherwise, and it [the elimination of yellow]
does solve the government's problem of introducing a statement that
shows transfer [by Godinez] to others for distribution." Id. Not
only has the movant failed to make a threshold showing that
severance was warranted, but he has also failed to establish
prejudice arising from the court's denial therefrom.

    In other words, even if Godinez had testified as proffered in
a severed trial, no showing has been made that this would have
affected the outcome of the proceedings given that there was
sufficient evidence upon which the jury could convict the movant.
Thus, no deficient performance or prejudice has been established in
this collateral proceeding and the movant is therefore entitled to
no relief on this claim.

    In **claim two**, the movant asserts that he was denied effective
assistance of counsel, where his lawyer failed or refused to allow
the movant to testify on his own behalf. (Cv-DE#1:6). According to
the movant, he wanted to explain that the "true reason" why he
switched ship assignment on July 3rd was because he wanted to spend
the holiday with his family, rather than for the purpose of

smuggling drugs. (Cv-DE#12:4-5). The movant also claims he would have testified that agents were ready to release him, but after they became aware that the movant had prior convictions, they changed their minds. (Id.). Moreover, the movant further claims he would have testified that he had no knowledge that there were drugs aboard the vessel. (Id.).

Of course, a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992)(en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997). The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir.), cert. den'd, 120 S.Ct. 139 (1999). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

In Teague, supra, the Eleventh Circuit held that an attorney who refused to accept the defendant's decision to testify, or failed to inform him of his absolute right to testify "would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected," and counsel's action would not have fallen "within the range of competence demanded of attorneys in criminal cases." 953 F.2d at 1534 (quoting Strickland v. Washington, supra). The Teague court, having the benefit of testimony from an evidentiary hearing on the defendant's motion for a new trial, found that counsel's performance had not

15

been deficient, and therefore did not address the prejudice prong of the <u>Strickland</u> analysis. 953 F.2d at 1535.

Not all assertions of ineffective assistance of counsel with regard to the right to testify or not testify warrant an evidentiary hearing. <u>Underwood v. Clark</u>, 939 F.2d 473 at 476 (7 Cir. 1991)(barebones assertion by a defendant is insufficient to require a hearing on a claim that the right to testify was denied, greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify are necessary to give the claim sufficient credibility to warrant a further investment of judicial resources); <u>Siciliano v. Vose</u>, 834 F.2d 29 (1 Cir.1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was insufficient to entitle him to hearing on issue of whether his right to testify was violated); <u>Passos-Paterna v. United States</u>, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

The Fourth Circuit has held that a hearing was not necessary where the defendant suffered no prejudice under <u>Strickland</u>, <u>supra</u>, because "his testimony at trial only helped his case...." <u>Sexton v. French</u>, 163 F.3d 874, 883 (4 Cir. 1998), <u>cert. den'd</u>, 120 S.Ct. 139 (1999). As stated, the Eleventh Circuit has not determined whether a conclusory allegation is sufficient to warrant further inquiry, such as the grant of a hearing.[5] <u>See</u>, <u>e.g.</u> <u>Brown</u>, 124 F3.d at 80. However, it is clear that a defendant must prove prejudice in order to be entitled to relief on such a claim. <u>See</u> <u>Teague</u>, <u>supra</u>.

In order to satisfy the prejudice prong, the movant must

_____

[5]In <u>Gallego v. United States</u>, 174 F.3d (11 Cir. 1999) the Court rejects a "per se credit counsel in case of counsel rule," with regard to credibility findings in evidentiary hearings, but does not address the issue of when a hearing is actually required.

demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, supra. at 394. In other words, the movant must prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687; see also, Lockhart v. Fretwell, 506 U.S. 364, 369 (1993), citing, Kimmelman v. Morrison, 477 U.S. 365 (1986)("The essence of an ineffective assistance of counsel claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). In Fretwell, the Supreme Court also concluded that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Fretwell, supra at 369, citing, United States v. Cronic, 466 U.S. 648, 653 (1984). The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" Fretwell, supra at 370, citing, Strickland, supra at 695.

The movant's allegations in his motion to vacate indicate that he was aware of his right to testify. (Cv-DE#12:4). Even if the movant had testified as proffered, and further assuming counsel was deficient for failing to allow the movant to exercise his constitutional right to testify on his own behalf, the movant still is entitled to no relief on this claim because he cannot satisfy the prejudice prong of Strickland. The evidence at trial amply supports his convictions. Thus, in light of the evidence against

17

him, it is not likely that the result of the trial would have been different had the movant testified as proffered. To the contrary, his proffered testimony could have had a detrimental impact, calling into question his credibility before the jury. Consequently, the movant is not entitled to relief on this claim.

Moreover, the movant's claim that counsel failed and/or refused to allow him to testify on his own behalf is self-serving and not supported by any affidavit from counsel.[6] Counsel could have well believed that the movant's version of the events was not credible, or too suspect to put the movant on the stand, and would subject the movant to detrimental cross-examination regarding his prior convictions. It is well settled under federal law that tactical or strategic choices cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir., 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); see e.g., United States v. Swanson, 943 F.2d 1070, 1075-76 (9 Cir. 1991)("In some cases a trial attorney may find it advantageous to his clients' interests to concede certain elements of an offense or his guilt of one of certain charges."); United States v. Simone, 931 F.2d 1186 (7 Cir. 1991)(admission that defendant was drug dealer in combination with vigorous defense of more serious charge recognized as "logical" and not ineffective assistance where

---

[6]See, e.g., White v. United States, 99 Ci. 11809, 2000 WL 546426 at *5 (S.D.N.Y. 2000)(Where petitioner asserted that held his counsel that he wanted to testify, but counsel rested the defenses case without calling petitioner, court found that petitioner's affidavit "fail[ed] to substantiate his allegation that trial counsel's performance was deficient." "'[T]he defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.'", quoting, United States v. Castillo, 14 F.3d 802, 805 (2nd Cir.), cert. den'd, 513 U.S. 829 (1994); see also, e.g., Jeffries v. United States, 234 F.3d 1268 (6th Cir. 2000)(table)(Petitioner "has not shown that counsel's performance was deficient as he merely made conclusory, self-serving allegations that his attorney refused to let him take the stand."); Torres v. Stinson, 2000 WL 1919916 at *5 (E.D. N.Y. 2000)("A barebones assertion by a defendant that his counsel failed to inform him of his rights is insufficient to establish an ineffective assistance of counsel claim under Strickland.").

inculpating evidence was undisputed). Under these circumstances, no deficient performance or prejudice has been establishing arising from counsel's misadvice or refusal to allow the movant to testify on his own behalf.

In **claim three**, the movant asserts that he was denied effective assistance of counsel, where his lawyer impermissibly stipulated to the amount of drugs involved in the offense, thereby waiving the movant's right to contest the issue. (Cv-DE#1:7). According to the movant, the quantity of drugs involved in the offense was improperly calculated in determining the movant's guideline sentence. He further argues that the quantity was not charged in the indictment or proven beyond a reasonable doubt.

First, it should be noted that no prejudice has been established arising from counsel's stipulation as to the quantity of drugs involved in the offenses. As previously narrated in this Report, the evidence at trial clearly established that the movant and his coconspirators were involved in a joint venture to import approximately 59 kilograms of cocaine into the United States aboard the *Seaboard Florida*. The drugs were intercepted by agents, field tested and weighed, and thereafter replaced with sham cocaine. Even if counsel had not stipulated to the quantity of drugs, there was sufficient independent evidence adduced at trial upon which the jury could convict the movant as to the offenses which, as charged in the Indictment, involved at least five kilograms of cocaine. (Cr-DE#30).

Moreover, review of the PSI reveals that the movant was held accountable for 58.95 kilograms of cocaine, which established a base offense level 36, pursuant to U.S.S.G. §2D1.1, because the amount of cocaine involved in the offense was over 50 but less than 150 kilograms. (PSI ¶18).

To the extent the movant means to argue that the quantity of drugs involved in the offense was not charged in the indictment or proven beyond a reasonable doubt,[7] and therefore, the PSI improperly calculated his base offense level, that claim likewise fails on the merits.

At the time of the movant's sentencing in May 24, 2004, neither Blakely[8] nor Booker[9] had been decided.[10] Although the precursor of those cases, Apprendi v. New Jersey, 530 U.S. 466 (2000) had been decided, at that time, the Eleventh Circuit had held that Apprendi did not apply to judge-made determinations pursuant to the Federal Sentencing Guidelines. See, e.g., United States v. Nealy, 232 F.3d 825, 829 n. 3 (11th Cir. 2000)("The Sentencing Guidelines are not subject to the Apprendi rule."); United States v. Harris, 244 F.3d 828, 829-30 (11 Cir. 2001)(holding that Apprendi does not apply to the relevant conduct provision of the Sentencing Guidelines); see also United States v. Diaz, 248 F.3d 1065, 1105 (11th Cir. 2001)(noting that "Sentencing Guideline issues are not subject to the Apprendi rule and, thus, there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt").

The law in the Eleventh Circuit is well established that it is

---

[7]In Cunningham v. California, ____ U.S. ____, 127 S.Ct. 856 (2007), the Court noted that its decisions in Apprendi, Ring, Blakely, and Booker, establish that the United States Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted. See also, Clay v. United States, 2007 WL 1034957, *7 (M.D. Ala. 2007).

[8]Blakely v. Washington, 524 U.S. 296 (2004) .

[9]United States v. Booker, 543 U.S. 220 (2005).

[10]Blakely was decided on June 24, 2004. Booker was decided on January 12, 2005. On September 2, 2004, the Eleventh Circuit in a post-Blakely, pre-Booker decision explicitly ruled that the Federal Sentencing Guidelines did not violate a defendant's Sixth Amendment rights. See United States v. Reese, 382 F.3d 1308 (11th Cir. 2004)(overruled).

not ineffective assistance for an attorney to fail to foresee a change in the law. See, United States v. Ardley, 273 F.3d 991 (11th Cir.2001)(denial of suggestion for rehearing en banc)(our circuit law completely forecloses the contention that an attorney's failure to anticipate the Apprendi decision is ineffective assistance); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir.1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'"). Counsel was not ineffective for failing to foresee the development in the law, which was contrary to then established Eleventh Circuit precedent.

Moreover, to the extent the movant claims appellate counsel was ineffective for failing to raise such a challenge in the initial brief on appeal, the movant is likewise entitled to no relief on the claim. The movant's initial brief was filed sometime before September 20, 2004, apparently after the decision in Blakely but before the Booker decision. Even if counsel had raised the issue, however, the movant would still be entitled to no relief because the quantity of drugs was charged in the indictment and proved beyond a reasonable doubt. Under these circumstances, the movant has failed to establish either deficient performance or prejudice arising from counsel's failure to pursue this issue either at sentencing or on appeal. He is therefore entitled to no relief on this claim.

In **claim four**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the incorrect or otherwise unlawful sentencing guidelines calculations as contained in the PSI. (Cv-DE#1:9).

To the extent the arguments in support of this claim are mere reiterations of the arguments raised in relation to claim three above, this claim should be denied for the reasons expressed

21

therein. To the extent the movant means to argue that counsel should have objected not only to the amount of drugs attributable to him, but also to the criminal history calculations, as well as, the probation officer's determination that pursuant to U.S.S.G. §5G1.1(c)(2), because the statutory minimum was greater than the lowest end of the guideline range, the guidelines were increased to 240 to 262 months in prison, that argument likewise fails on the merits.

Even assuming arguendo that counsel was deficient for failing to preserve a <u>Booker</u> claim at sentencing, by arguing that the base offense level determination, as well as, the criminal history category and resulting guideline range should have been charged and proven beyond a reasonable doubt, there is no evidence of record that the court, under an advisory guideline regime, would have imposed a sentence below the 252 months in prison, which was above the low end of the guideline range. Under these circumstances, the movant cannot establish prejudice arising from counsel's failure to pursue this claim, which was contrary to the law in effect at the time of the movant's sentencing.

In **claim five**, the movant asserts that he was denied effective assistance of counsel on appeal, where his lawyer failed to raise as error on appeal that the court erred in denying trial counsel's request to strike for cause a biased potential juror. (Cv-DE#1:14). According to the movant, an unidentified venireperson indicated during voir dire that he/she was a close relative of the Chief of Police of a neighboring municipality, with whom the venireperson had frequent contact, often dining with the chief. (Cv-DE#1:14). The movant maintains that despite counsel's request to strike that person for cause, the court overruled counsel's request which ultimately resulted in that venireperson being seated on the jury. (<u>Id</u>.).

It should first be noted that the movant does not identify the venireperson he wanted stricken from the panel. Such a conclusory allegation, bereft of record support, is entitled to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

Notwithstanding, there is nothing of record to suggest that the venireperson was unable to be impartial, or failed and/or refused to follow the court's instructions. The decision to strike a prospective juror for cause "upon a suggestion of partiality is within the sound discretion of the trial judge." <u>See</u> <u>e.g.</u>, <u>United States v. Rhodes</u>, 177 F.3d 963, 965 (11th Cir. 1999)(citation omitted). The trial judge evaluating the fitness of prospective jurors must consider whether the jurors "had such fixed opinions that they could not judge impartially the guilt of the defendant." <u>Patton v. Yount</u>, 467 U.S. 1025, 1035 (1984)(<u>citing</u>, <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961)). In particular, when reviewing juror impartiality, the Eleventh Circuit has focused on whether (1) the juror may be affected by matters not in evidence, and (2) the juror may presume guilt rather than innocence. <u>See</u> <u>Depree v. Thomas</u>, 946 F.2d 784, 790 n. 11 (11th Cir. 1991) (<u>discussing</u> <u>United States v. Martin</u>, 749 F.2d 1514 (11th Cir. 1985)). When the juror demonstrates, however, that she can lay aside any opinion she might hold and render a judgment based solely on the evidence presented in court, then dismissal is not required. <u>See</u> <u>United States v. Martin</u>, 7459 F.2d 1514, 1517-18 (11th Cir. 1985).

In this case, although the voir dire proceedings transcribed, the movant provides no objective evidence that the challenged juror would have been unable to evaluate the evidence objectively and render a fair decision in accordance with the court's instructions. <u>See</u> <u>Rhodes</u>, 177 F.3d at 966 ("[A]lthough [the juror] may have had preconceived notions ... she demonstrated that those notions would not prevent her from deciding the case solely based on the evidence

presented in court...."); <u>Depress v. Thomas</u>, 946 F.2d 784, 790 (11th Cir. 1991). Thus, the movant cannot establish that the trial court erred in failing to strike the prospective juror. Absent a showing that the venireperson was somehow impartial or biased towards the movant, no showing has been made that the court's failure to strike the venireperson for cause was unlawful. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim.

In this case, not only has the movant failed to demonstrate that the venireperson could not be fair and impartial, but he has also not shown that he was in any way deprived of a fundamentally fair trial. It is axiomatic that the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. <u>Irvin v. Dowd</u>, 366 U.S. 217, 222 (1961). A petitioner is not entitled to relief unless the disqualifying fact of a juror was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial. <u>See generally</u> <u>Passman v. Blackburn</u>, 652 F.2d 559, 567 (5 Cir. 1981), <u>cert.</u> <u>denied</u>, 455 U.S. 1022 (1982). <u>But see</u> <u>Johnson v. Armontrout</u>, 961 F.2d 748, 755 (8 Cir. 1992)(holding that absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel). Under Florida law, the test for whether a juror is competent is "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instruction on the law given to him [or her] by the court." <u>Turner v. State</u>, 645 So.2d 444, 446 (Fla. 1994). Accordingly, the movant has suffered no prejudice as a result of the alleged deficiency. Consequently, appellate counsel was not ineffective for failing to raise this nonmeritorious claim on direct appeal. The movant is therefore entitled to no relief on this claim.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

<u>Conclusion</u>

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 9th day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Roy Geer, <u>Pro Se</u>
     Reg. No. 36439-004
     F.C.C. - Coleman (Low)
     P.O. Box 1031
     Coleman, FL 33521-1031

     Harry C. Wallace, Jr., AUSA
     United States Attorney's Office
     500 E. Broward Boulevard
     7th Floor
     Ft. Lauderdale, FL 33394