# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23076-CIV-LENARD/WHITE
(RELATED CASE: 03-20566-CR-LENARD)

**ROY GEER**,

                    Movant,

vs.

**UNITED STATES OF AMERICA,**

                    Respondent.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (D.E. 14); DENYING MOTION TO VACATE HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255 (D.E. 1); AND DISMISSING CASE

**THIS CAUSE** is before the Court on the Report and Recommendation of the Magistrate Judge ("Report," D.E. 14), issued on June 9, 2008, which recommends that the Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Motion," D.E. 1), filed on or about November 21, 2007, be denied.  Movant Roy Geer ("Movant") filed his Objections to the Report  ("Objections") on or about July 8, 2008.  (D.E. 17.)  After a de novo review of the Motion, the Report, the Objections, and the record, the Court finds as follows:

I.      **Procedural and Factual Background**

The following procedural and factual background to Movant's claim comes from the Report and is not objected to by Movant:

On June 28, 2003, two duffel bags containing cocaine were discovered aboard the Seaboard Florida, a three deck cargo vessel, which had departed from the Port of Miami on

a 13-14-day voyage.  The bags were concealed on the main deck of the vessel in a warehouse area used to store ship materials, such as spare parts, wires, piping, pipes, rope, and wood. After examining the bags, the captain of the vessel, Hector Martell, left two crew members to guard the bags, while he telephoned his superiors at Seaboard Marine, who directed the captain to bring the duffel bags to Miami. Thereafter, Captain Martell transferred the duffel bags to a steel storage area behind his cabin, which he secured with two padlocks, keeping the keys in his possession.

Prior to the vessel completing its voyage, Captain Martell anchored the vessel at sea off of Miami Beach so that customs agents and U.S. Coast Guard officers could board the vessel and retrieve the drugs.  Numerous officers and agents eventually boarded the vessel, retrieved the duffel bags, and field tested the substance contained therein, which confirmed that the bags were carrying 59 square packages of cocaine, which were then replaced by agents with sham cocaine. The bags were then returned to the warehouse area where they were originally discovered. Thereafter, some of the agents and officers left the vessel, while three agents, posing as crew members, remained aboard until the vessel docked at the Port of Miami. Two of the remaining agents secreted themselves in the warehouse area where the drugs were stored.

Once the vessel docked at the Port of Miami, U.S. Customs agents cleared it. The cargo was to be offloaded by employees of Eller ITO Stevedoring Company ("Eller"), who had the contract for unloading Seaboard Marine vessels.  Eller would in turn utilize

longshoremen from the International Longshoreman's Association ("ILA") labor pool to unload the vessels.  Movant and coconspirator Godinez were employed by Eller as stevedore superintendents.   They would receive assignments from Operations Manager Fernando Alvarez, who scheduled their work, including ship assignments and shifts.

Alvarez explained that six ships were scheduled to arrive at the port on July 3, 2003. According to Alvarez, the stevedore superintendents assigned to unload the Seaboard Florida were Charles Anchors, coconspirator Godinez, and "Tony."  Anchors was scheduled to be the top deck stevedore, Godinez was scheduled as the yard stevedore, and Tony was the bottom deck supervisor, coordinating the unloading of containers from the lower deck. Movant, on the other hand, was listed to work as the stevedore superintendent on another vessel, the Seaboard Star. However, on July 3rd, Alvarez learned for the first time that Movant had switched his work assignment with Tony, so that Movant would assume the duties of the bottom deck superintendent aboard the Seaboard Florida.  That day, Movant asked a third mate from the vessel why it had been delayed, to which he was advised that the ship had been stopped in the Dominican Republic by Coast Guard officials, but that they had not found any stowaways or drugs aboard the vessel. The third mate recalled being surprised when Movant later drove a yellow truck aboard the vessel, because he had never before observed a truck enter a ship prior to commencing the unloading operation.

After the ship was cleared by customs, undercover agents observed three men walk along the side of the boat, wearing brightly colored vests used by port workers.  Although

the view by one of the agents was blocked by the appearance of the yellow truck, he was able to observe Movant, and his three coconspirators walk in front of the truck shortly after it was driven aboard the vessel. Movant and the others then headed towards the location where the drug laden duffel bags were located. Coconspirator Walden then looked around the area with a flashlight and shortly thereafter signaled to Movant and the other coconspirators. Walden thereafter picked up one of the duffel bags and began to walk away. Godinez then bent forward, picked up the second duffel bag, and headed in the same direction as Walden.

Agents immediately thereafter gave a signal, and then ordered Godinez to get on the ground. Later, as Godinez was being taken down a walkway, one agent observed the other duffel bag Walden had been carrying on the ground. When that same agent also observed Movant in the yellow truck, he ordered Movant out of the truck. Thereafter, Movant and others were arrested and transferred to the U.S. Customs office on Brickell Avenue.

After being advised of and waiving his constitutional rights, both verbally and by executing a written waiver of rights form, Godinez stated he was directed to pick up some stuff, which he believed to be illegal, and to place them on a truck, but had then been caught "red handed."

On July 17, 2003, Movant was charged by Indictment with conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §952(a), 21 U.S.C. §963, 21 U.S.C. §960(b)(1) (Count 1); attempted importation of five kilograms or more of cocaine, in violation of 21 U.S.C. §952(a), 21 U.S.C. §963, 21 U.S.C. §960(b)(1), and 18 U.S.C. §2

4

(Count 2); conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §841(a)(1), 21 U.S.C. §841(b)(1)(A), and 21 U.S.C. §846 (Count 3); and attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §841(a)(1), 21 U.S.C. §841(b)(1)(A), 21 U.S.C. §846, and 18 U.S.C. §2 (Count 4). Prior to trial, the government filed an Information pursuant to 21 U.S.C. §851, seeking an enhanced sentence if Movant was convicted.

Movant filed a pretrial motion in limine to exclude the post-arrest statement of coconspirator Jose Godinez, or in the alternative for severance. Following a hearing on the motion, a Report was entered, recommending that the post-arrest statement be redacted, a limited instruction given, and the statement not be used to argue the guilt of any defendant, other than Godinez. In light of the foregoing, the Magistrate Judge further recommended that the request for severance be denied. On December 9, 2003, after reviewing objections filed by Movant, the district court adopted the Report, and entered an order denying severance. Movant eventually proceeded to trial, where he was found guilty as charged.

A PSI was prepared prior to sentencing. The probation officer determined that, pursuant U.S.S.G. §§3D1.2(d) and 2D1.1(a)(3), Movant was being held accountable for 58.95 kilograms of cocaine, and therefore, for an offense involving at least 50 kilograms, but less than 150 kilograms of cocaine, the offense level was set at 36. The probation officer further determined that Movant had a total of three criminal history points, resulting in a criminal history category II. Based on a total offense level 36 and a criminal history category

II, Movant's advisory guideline range was determined to be 210 to 262 months in prison. However, the probation officer noted, that because the statutory minimum mandatory term of imprisonment was twenty years for violations of 21 U.S.C. §§960(b)(1) and 841(b)(1)(A), pursuant to U.S.S.G. §5G1.1(c)(2), the guidelines range needed to be increased to 240-262 months in prison.  Objections to the PSI were filed by the movant.

On May 24, 2004, the movant was sentenced to concurrent terms of 252 months in prison, followed by 10 years supervised release.   Movant appealed, raising the following claims: (1) The court erred in denying his motion to exclude the post-arrest statement of codefendant Godinez and motion to sever; and (2) the court erred in denying his motion for judgment of acquittal where there was insufficient evidence to support the convictions.

On September 13, 2006, the Eleventh Circuit affirmed Movant's judgment in a written, but unpublished opinion. United States v. Walden, et al., 175 Fed. Appx. 308 (11th Cir. 2006); Rehearing and rehearing en banc was denied on July 14, 2006. United States v. Walden, et al., 186 Fed. Appx. 983 (11th Cir. 2006)(table). Certiorari review was denied on November 27, 2006.  Geer v. United States, 127 S.Ct. 688 (2006). The instant Motion was timely filed less than one year later on November 21, 2007.

## II.    The Motion and the Report

Movant raises five claims in his Motion:

1.      He was denied effective assistance of counsel, where his lawyer failed to conduct adequate pretrial investigation and call codefendant Godinez as a defense witness at trial. (D.E. 1 at 5).

2.      He was denied effective assistance of counsel, where his lawyer failed or refused to allow the movant to testify on his own behalf. (Id. at 6).

3.      He was denied effective assistance of counsel, where his lawyer impermissibly stipulated to the amount of drugs involved in the offense, thereby waiving the movant's right to contest the issue. (Id. at 7).

4.      He was denied effective assistance of counsel, where his lawyer failed to object to the incorrect or otherwise unlawful sentencing guidelines calculations as contained in the PSI. (Id. at 9)

5.      He was denied effective assistance of counsel on appeal, where his lawyer failed to raise as error on appeal that the court erred in denying trial counsel's request to strike for cause a biased potential juror. (Id. at 14.)

The Magistrate Judge has recommended in his Report that the Court deny all of Movant's claim and dismiss the Motion. The Magistrate Judge began his Report by setting forth the standard for prevailing on an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984): "In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different." (D.E. 14 at 5.) The Magistrate Judge noted that review of counsel's performance and strategy is to be highly deferential, and bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. (D.E. 14 at 5.)

In support of his first claim, Movant submits an unsworn letter from Godinez dated

7

March 5, 2008, which provides:

> This document serves to attest to the fact that on the evening of July 3, 2003,
> I Jose Lazaro Godinez did not provide any statement regarding the
> circumstances pertaining to events which transpired on board the Seaboard
> Florida on the aforementioned date. Furthermore I did not answer any
> questions other than those pertaining to biodemographic data (Name, Address,
> etc.) this fact is clearly substantiated by my sworn testimony at a "Evidence
> Suppression Hearing" Conducted before Magistrate Judge Simonton on
> October 9, 2003. Furthermore it was my understanding that I would be allowed
> to testify (as to the alleged statements) at trial but the defense rested allowing
> the jury to hear a onesided argument, instead of the truth.

(See D.E. 13.)

The Magistrate Judge started his analysis of Movant's first claim by noting that

post-trial, self-serving affidavits/letters, such as the one relied upon by the movant in this

case are viewed with extreme suspicion.  (D.E. 14 at 6.)  Next, the Magistrate Judge found

that in order to succeed on a motion for a new trial based on newly discovered evidence, the

movant must establish that: (1) the evidence was discovered after trial; (2) the failure of the

defendant to discover the evidence was not due to a lack of due diligence; (3) the evidence

is not merely cumulative or impeaching; (4) the evidence is material to issues before the

Court; and, (5) the evidence is such that a new trial would probable produce a different result.

(Id. at 7 (citing United States v. Schlei, 122 F.3d 944, 991 (11th Cir. 1997).)  Because the

Movant had not established that his failure to ascertain this evidence was not due to lack of

diligence on his part, the Magistrate Judge found that his claim failed.  The Magistrate Judge

further found that, even if Movant could establish diligence, no showing had been made that

the outcome of the guilt phase portion of the movant's trial would have been different had

8

Godinez testified, because Godinez's unsworn statements in his letter were definitively contradicted by his post-arrest statement and the evidence adduced at trial. "Moreover, even if the movant had attempted to call Godinez as a defense witness, no showing has been made that he would have testified as represented. At that time, Godinez most likely would have invoked his Fifth Amendment rights and refused to answer any questions." (D.E. 14 at 10-11.) The Magistrate Judge further found that Movant could not satisfy the prejudice prong of the Strickland analysis, and, also, that Movant could not prevail on the claim that counsel failed to call this witness because counsel's strategic decision cannot be second-guessed in a collateral proceeding. (Id. at 11.) Finally, the Magistrate Judge found that, "To the extent the movant means to argue that counsel was ineffective for failing to seek severance of the trials so that Godinez could testify as a defense witness, that claims likewise fails on the merits." (Id. at 12.)

In support of his second claim, Movant argues that if he had been allowed to testify he would have explained the "true reason" why he switched his ship assignment on July 3, 2003. (See id. at 14-15.) Further, he argues that he would have testified that the government agents were ready to release him but they changed their minds after they became aware that he had prior convictions, and that he had no knowledge that there were drugs aboard the vessel. (See id. at 15.)

The Magistrate Judge rejected Movant's arguments in support of his second claim: "Even if the movant had testified as proffered, and further assuming counsel was deficient

for failing to allow the movant to exercise his constitutional right to testify on his own behalf, the movant still is entitled to no relief on this claim because he cannot satisfy the prejudice prong of Strickland." (Id. at 17.)   The Magistrate Judge further found that Movant's allegations in his Motion indicate that he was aware of his right to testify and that his contentions to the contrary were unsupported by any external evidence.  Finally, Movant's counsel's decision not to put Movant on the stand was a strategic choice that cannot support a collateral claim of ineffective assistance of counsel.

In support of his third claim, Movant argues that the quantity of drugs involved in the offense was improperly calculated in determining his guideline sentence and that the quantity was not charged in the indictment or proven beyond a reasonable doubt.  (See id. at 19.)

The Magistrate Judge found that Movant had failed to establish prejudice arising from counsel's stipulation as to the quantity of drugs involved in the offenses.  The Magistrate Judge also found that the record indicates that the quantity of drugs was proven beyond a reasonable doubt at trial.  Further, at the time Movant was sentenced, the cases that might have impacted Movant's claim, Blakely v. Washington, 524 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005), had not yet been decided, and the Eleventh Circuit had held that the precursor to those cases, Apprendi v. New Jersey, 530 U.S. 466 (2000), did not apply to judge-made determinations like the one in Movant's sentencing.

As to Movant's fourth claim, the Magistrate Judge found that this claim was a mere reiteration of his third claim and accordingly failed for the same reasons.  Additionally, the

10

Magistrate Judge found that even assuming that Movant's counsel should have objected at sentencing that his criminal history category should have been charged and proven beyond a reasonable doubt, there is no evidence of record that the court, under an advisory guideline regime, would have imposed a sentence below the 252 months in prison, which was above the low end of the guideline range.  Therefore, Movant could not establish prejudice.

In support of his fifth claim, Movant argues that an unidentified venireperson indicated during voir dire that he/she was a close relative of the Chief of Police of a neighboring municipality, with whom the venireperson had frequent contact, often dining with the chief.  (See id. at 22.) Movant contends that despite counsel's request to strike that person for cause, the court overruled counsel's request which ultimately resulted in that venireperson being seated on the jury.  (See id.)

The Magistrate Judge found that Movant's contentions were vague and totally unsupported by evidence from the record.  Further, Movant provided no objective evidence that the challenged juror would have been unable to evaluate the evidence objectively and render a fair decision in accordance with the court's instructions.  Additionally, the Magistrate Judge found that Movant had failed to establish that the failure to strike the venireperson deprived him of a fundamentally fair trial.

Finally, the Magistrate Judge found that Movant's request for an evidentiary hearing should be denied: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record." (Id. at

11

25.)

### III.   Movant's Objections

Movant only makes Objections to the Magistrate Judge's findings as to his first and second claims.  As to his first claim, that he was denied effective assistance of counsel, where his lawyer failed to conduct adequate pretrial investigation and call codefendant Godinez as a defense witness at trial, Movant argues that the trial court may make a credibility determination in favor of trial testimony without taking additional live testimony. Movant argues that the only live testimony regarding Godinez's allegation that he never made admissions to the arresting officers, taken during the second evidentiary hearing in the underlying criminal case, is in complete agreement with the affidavit from Godinez submitted by Movant.  (D.E. 17 at 1.)

Next Movant contests the Magistrate Judge's finding that the trial evidence established that Movant was actively involved in the offenses for which he was convicted. Movant cites to Judge Barkett's dissenting opinion from his appeal which he argues establishes that there was no evidence demonstrating his knowledge that there were narcotics aboard the Seaboard Florida.  (Id. at 2 (citing United States v. Walden, et al., 175 Fed. Appx. 308 (11th Cir. 2006) (Barkett, J., dissenting)).)  Movant argues that allowing Godinez to testify would have allowed Movant to rebut most of the government's case-in-chief.  (D.E. 17 at 2.)  Movant contests the Magistrate Judge's finding that Godinez would have invoked the Fifth Amendment on the stand is belied by Godinez's willingness to testify on the matter

at the evidentiary hearing.  (<u>Id.</u>)   Finally, Movant argues that his counsel's failure to call Godinez was not ineffective from a strategic standpoint, but rather from a due diligence standpoint.  (<u>Id.</u>)  Movant argues that had his counsel been prepared for trial, he would have known that Godinez was able and willing to testify on his behalf.  (<u>Id.</u>)

Finally, Movant objects to the Magistrate Judge's findings that even had he testified there was still ample evidence to convict him at trial.  (<u>Id.</u> at 2-3.)  In support of his objection, Movant again cites to the majority opinion denying his appeal.  (<u>Id.</u> at 3.)  Movant argues that had he been able to testify, he may have swayed the jury in favor of an acquittal. (<u>Id.</u>)

**IV.    Discussion**

As a threshold matter, the Court notes that Movant has not objected to the Report's findings regarding his third, fourth, and fifth claims, and, as a result, the Court will only discuss the merits of his first and second claims.  <u>See</u> 28 U.S.C. § 636(b)(1) (district court is only required to make "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made").

**A.    Claim One**

As to Movant's first claim, the Court agrees with the Magistrate Judge that Movant's trial counsel was not ineffective for failing to call coconspirator Godinez to the stand. Movant's trial counsel's decision to not call Godinez to the stand was a strategic decision that this Court is disinclined to question.  In the underlying criminal case, Godinez had testified at his evidentiary hearing on the defendants' motions to suppress; the Magistrate

Judge, in her Report and Recommendation on the motions, specifically found that Godinez was an untrustworthy witness and his testimony was not credible.  (See, 03-20566-CR-LENARD, D.E. 116 at 4.)  Thus, trial counsel's decision not to call Godinez to the stand appears to be sound and outside the scope of an ineffective assistance inquiry.  See also Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) ("a strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternatives").

The Court also finds that there is no merit to Movant's contention that his trial counsel's decision to not call Godinez to testify was somehow indicative of his failure to properly prepare for trial.  Movant's trial counsel, Edward Shohat, filed several detailed briefs in an effort to suppress Godinez's statements.  (See 03-20566-CR-LENARD, D.E. 51, 73, 87).  Movant provides no factual or evidentiary support for his contention that his counsel was somehow unaware that Godinez was willing to testify that he had not made the post-arrest statements attributed to him; in fact, the record definitively establishes otherwise.

Finally, the Court concurs with the Magistrate Judge that Movant is unable to demonstrate prejudice under the second prong of the Strickland ineffective assistance of counsel analysis.  Movant, relying on Judge Barkett's dissenting opinion that the government had not adduced evidence demonstrating the defendants' specific intent, see United States v. Walden, 175 Fed. Appx. 308, 317 (11th Cir.2006), argues that allowing Godinez to testify would have pushed the jury to find a reasonable doubt as to the charges against him.

14

However, Movant ignores the very real possibility that Godinez's testimony could have pushed the jury in the exact opposite direction. The Magistrate Judge presiding over the evidentiary hearing found Godinez to be a less than credible witness; there is no reason to believe that the jury would have thought otherwise.  See Spaziano v. Singletary, 36 F.3d 1028, 1040 (11th Cir. 1994) ("a defense attorney's sense of the jury's reaction to testimony or evidence is a sound basis on which to make strategic decisions").

B.  Claim Two

Movant's second claim fails for the same reasons as his first claim.  Movant's counsel's decision to rest after the prosecution's case-in-chief is a perfectly acceptable strategic decision.   Movant argues that his counsel's failure to allow him to testify was "inexplicable";  in support of his claim, he cites to the Eleventh Circuit's majority opinion in his appeal, in which the Court stated, "[w]hether the evidence is sufficient to sustain the verdicts in this case is a close call." United States v. Walden, 175 Fed. Appx. at 311.  If anything, the Eleventh Circuit's finding that the evidence was a close call supports this Court's finding that Movant's trial counsel made an acceptable strategic decision.  In cases of close evidence, trial counsel may often decide that putting the defendant on the stand is an unnecessary gamble that could risk swaying a jury otherwise inclined to acquit the defendant.  Thus, Movant cannot establish that his counsel's representation "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984).  Additionally, Movant cannot establish that he was prejudiced by his counsel's failure to call

him as a witness.  As explained above, it is just as plausible to assume that the jury would have found Movant to be a not credible witness as it is to assume that his testimony would have helped his cause.  Further, there is no credence to Movant's argument that his trial counsel refused to let him testify against Movant's express wishes.  Movant has provided no evidence in support of this claim and therefore the Court need not address it further. Accordingly, it is:

**ORDERED AND ADJUDGED** that:

1.     The Report of the Magistrate Judge (D.E. 14) is **ADOPTED consistent with this opinion**.

2.     The Motion to Vacate Sentence pursuant to 28 U.S.C. §2255 (D.E. 1), filed on or about November 21, 2007, is **DENIED.**

3.     All pending motions not otherwise ruled upon are **DENIED AS MOOT**.

4.     This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 28th day of August, 2008.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

cc:     U.S. Magistrate Patrick A. White
        Roy Geer, pro se
        Counsel of Record

16